Edward ARTES–ROY and Kristie Artes-Roy, Plaintiffs–Appellants,

v.

CITY OF ASPEN, a Municipal Corporation, Defendant–Appellee.

No. 92SA448.

Supreme Court of Colorado, En Banc.

July 26, 1993.

Rita M. Farry, Denver, for plaintiffs-appellants.

Watson, Nathan & Bremer, P.C., Daniel J. Torpy, Denver, for defendant-appellee.

Justice SCOTT delivered the Opinion of the Court.

Edward and Kristie Artes–Roy, plaintiffs below, bring this direct appeal seeking our review of an order of the district court, granting the motion of the City of Aspen, defendants below, for summary judgment and awarding attorney fees to the City of Aspen. We affirm and, finding the Artes–Roys' arguments on appeal frivolous, we award costs of this appeal to Aspen.

## I.

On April 17, 1991, Edward and Kristie Artes–Roy (the "Artes–Roys" or appellants) filed their verified complaint in the Pitkin County District Court, claiming provisions of the Aspen City Charter relating to the appointment of the Aspen municipal judge are unconstitutional. In addition, the Artes–Roys requested an injunction to prevent the enforcement of Aspen Ordinances 57, 58 and 59 of the series of 1990, and sought an order to halt all proceedings in the Aspen Municipal Court to enforce the questioned ordinances.[1] The City of Aspen ("Aspen") filed an answer essentially denying the allegations.

Shortly thereafter, Aspen filed a motion for summary judgment. The motion was supported by an affidavit of Kathryn S. Koch, the city clerk. Ms. Koch's affidavit affirmed that the questioned ordinances were "duly promulgated and adopted" pursuant to the Aspen Charter and statutes of Colorado. In addition, Aspen attached several certificates, executed by Ms. Koch, to affirm the proper publication of the three questioned ordinances. The Artes–Roys, who were then represented by counsel, filed a response and a cross-motion for summary judgment. However, the Artes–Roys' response did not refute the facts submitted by Aspen in the affidavit and certificates of Ms. Koch. Appellants' response only repeated the allegations in their complaint without any supporting or counter-affidavits.[2]

---

1. In a separate action brought in Aspen Municipal Court and still pending at the time the Artes–Roys brought the instant action, the City of Aspen had charged Edward Artes–Roy, but not Kristie Artes–Roy, with violating Ordinances 57, 58 and 59, provisions of the Uniform Building Code, in connection with certain construction on property located in Aspen.

2. There were three exhibits attached to the Artes–Roys' filing: Exhibit A was a copy of the complaint naming Edward Artes–Roy as a defendant in proceedings filed May 20, 1991, in Aspen Municipal Court and brought by Aspen alleging numerous building code violations; Exhibit B was a copy of an amicus curiae brief of the Colorado Municipal Judges Association filed in *People of the City of Thornton v. Horan,* 192 Colo. 144, 556 P.2d 1217 (1976), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2922, 53 L.Ed.2d 1061 (1977); and Exhibit C was a copy of the transcript of testimony of the Deputy City Clerk, Kathleen Strickland, from an altogether different proceeding, wherein Ms. Strickland testified that certain copies of Ordinances 57, 58 and 59 were not certified by the mayor of Aspen.

By order dated September 19, 1991, the district court granted Aspen's motion for summary judgment and, in effect, denied the cross-motion for summary judgment filed by the Artes–Roys. In its order the district court ruled that Aspen's charter provisions for appointment of its municipal judge are constitutional, that Ordinances 57, 58 and 59 are enforceable and properly promulgated, and that Aspen was entitled to judgment for reasonable attorney fees. This direct appeal of the trial court's entry of summary judgment followed.[3]

## II.

Summary judgment, a drastic remedy, should be granted only when there is no genuine issue as to any material fact and, as a matter of law, the moving party is entitled to judgment. C.R.C.P. 56(c); *Peterson v. Halstead*, 829 P.2d 373 (Colo. 1992). The purpose of summary judgment is to allow the parties to pierce the formal allegations of the pleadings and to save the time and expense connected with a trial, as well as to serve the statutory goal of saving judicial resources. *Mt. Emmons Min. Co. v. Town of Crested Butte*, 690 P.2d 231 (Colo.1984). At the same time, in reaching its determination, a court must consider "the pleadings ... and admissions on file, together with the affidavits, if any." C.R.C.P. 56(c); *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 736 (Colo.1991).

As set forth in our rules of civil procedure, when a party moves for summary judgment, supported by affidavits, and meets its initial burden of production, the burden shifts to the opponent to establish that there is a triable issue of fact. C.R.C.P. 56(e) provides in relevant part:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or otherwise provided in this Rule, must set forth specific facts showing

that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

Here, in the face of Aspen's motion for summary judgment and supporting affidavit, the Artes–Roys did not refute, by affidavit or counter-affidavit, the statements of fact averred by Aspen. Thus, we must assume that there is no genuine issue of material fact between the parties, *People in Interest of J.M.A.*, 803 P.2d 187, 193 (Colo.1990), and although they may not have embraced the factual assertions of Aspen, the Artes–Roys cannot now raise an issue of fact not presented to the trial court. *Sullivan v. Davis*, 172 Colo. 490, 495, 474 P.2d 218, 222 (1970).

On the record before us, we conclude, as did the trial court, that there is an absence of any genuine issue of fact and therefore summary judgment is appropriate. *Crouse v. City of Colorado Springs*, 766 P.2d 655 (Colo.1988); *Mt. Emmons Min. Co. v. Town of Crested Butte*, 690 P.2d 231 (Colo. 1984); C.R.C.P. 56(c). We next look to the controlling law.

## III.

In their appeal before this court, the Artes–Roys raise the following questions of law: whether the Aspen Charter provisions relating to the appointment of the Aspen municipal judge are unconstitutional; whether Aspen Ordinances 57, 58 and 59 of the series of 1990 are lawful; and whether the trial court abused its discretion in awarding attorney fees to defendant Aspen. We will consider each in turn.

### A.

 In examining whether the district court correctly held that the charter provisions for appointment of the municipal judge are not unconstitutional, we turn to our constitution and applicable statutes. Article XX, section 6 of the Constitution of

---

**3.** The Artes–Roys originally filed this appeal with the court of appeals, however the case was transferred to this court because at the time this case was filed the court of appeals did not have jurisdiction to hear cases in which the constitutionality of a statute was at issue. *Compare* § 13–4–102(1)(b), 6A C.R.S. (1987), *with* § 13–4–102(1)(b), 6A C.R.S. (1992 Supp.).

the State of Colorado authorizes home rule cities, such as Aspen, to enact charter provisions "to legislate upon, provide, regulate, conduct and control ∴.. municipal courts," including the appointment of judges. *People of City of Thornton v. Horan*, 192 Colo. 144, 146, 556 P.2d 1217, 1218 (1976), *cert. denied*, 431 U.S. 966, 97 S.Ct. 2922, 53 L.Ed.2d 1061 (1977). By statute, the General Assembly has enacted legislation to give effect to the constitutional grant of authority to home rule cities and has stated as public policy that "[u]nless otherwise provided in the charter of a home rule city, the municipal court shall be presided over by a municipal judge ... appointed ... for a specified term of not less than two years." § 13–10–105, 6A C.R.S. (1987).[4] Next, we compare the Aspen Charter provisions to see if they are in accordance with our state law. Section 7.2. of article VII of the Aspen City Charter provides for the appointment of a municipal judge by the city council, requiring a fixed salary which "shall not be dependent upon the outcome of the matters to be decided." In addition, section 7.2.(a) sets a "specified term of not less than two (2) years and section 7.2.(d) clearly limits removal "during his term of office only for cause."[5]

Appellants argue that due to the fact the Aspen municipal judge is appointed by the Aspen City Council, paid by Aspen, and the judge is "dependent on the whim" of council for re-appointment and salary level, and because "there is evidence of bias," the charter provisions are unconstitutional and appellants are denied due process. The Artes–Roys do not question the authority of Aspen to create or appoint judges, acknowledging our controlling decision in *Horan*, but, on appeal, object to "ambiguous standards" which may be applied to terminate the judge for cause under the Aspen Charter and to "bias" resulting from the judge's employment by Aspen, making, appellants suggest, the judge "a part of the City government" and thus "not an independent and impartial jurist." Finally, the Artes–Roys suggest that the opinion of our court in *Horan* is limited by the dissenting opinion and that *Horan* can be distinguished from this case because, in this case, "there is evidence of bias."

In *Horan* we held that a city charter provision adopted by a home rule city, the City of Thornton, which appointed its municipal judges *removable at the will of the city council*, does not violate a litigant's due process or equal protection guarantees. *Horan*, 192 Colo. at 146–47, 556 P.2d at

---

4. Sections 13–10–105 and 13–10–103, 6A C.R.S. (1987) allow home rule cities to control the appointment of municipal judges. Section 13–10–103 provides, in part,

**Applicability.** This article shall apply to and govern the operation of municipal courts in the cities and towns of this state. Except for [provisions not relevant here], this article may be superseded by charter or ordinance enacted by a home rule city.

Section 13–10–105 provides, in pertinent part, Unless otherwise provided in the charter of a home rule city, a municipal court shall be presided over by a municipal judge who shall be appointed by the municipal governing body for a specified term of not less than two years....

5. Article VII. Legal and Judiciary

Section 7.2. Judiciary.
(a) Municipal judge. There shall be a municipal court vested with exclusive original jurisdiction of all causes arising under the ordinances of the city and as may be conferred by law. The municipal court shall be presided over and its functions exercised by a judge

appointed by the council for a specified term of not less than two (2) years. The council may re-appoint the municipal judge for a subsequent term or terms, except that the initial appointment may be for a term of office which expires on the date of the organizational meeting of the council after the next general election.

. . . .
(c) Compensation. The municipal judge shall receive a fixed salary or compensation set by the council which salary or compensation shall not be dependent upon the outcome of the matters to be decided by the municipal judge....
(d) Removal. Any municipal judge may be removed during his term of office only for cause. A judge may be removed for cause if:
(1) He is found guilty of a felony or any other crime involving moral turpitude;
(2) He has a disability which interferes with the performance of his duties, and which is, or is likely to become, of a permanent character;
(3) He has willfully or persistently failed to perform his duties; or
(4) He is habitually intemperate.

1218–19. Unlike the municipal court in *Horan,* in which the Thornton City Council could remove judges "at [its] will," the clear language of the Aspen City Charter prohibits such action by the Aspen City Council. Under section 7.2.(a), municipal judges appointed by the city council serve a "specified term." Moreover, under section 7.2.(d) of the city charter, Aspen municipal judges may be removed "only for cause," not at the "whim" of the City Council as appellants argue. By way of example, section 7.2. provides that a municipal judge may be removed if the judge "has willfully or persistently failed to perform his duties," *id.* at 7.2.(d)(3), or for being "habitually intemperate," *id.* at 7.2.(d)(4). Although appellants conclude, without explanation, that such standards are "ambiguous," we disagree and find the same reasonable and consistent with expectations of all judicial officers. *See generally,* Cannons of Judicial Conduct, Canons 1, 3 and 5.

The Artes–Roys take great umbrage in what they perceive as a bias resulting from the fact the municipal judge is employed by Aspen, however, the Artes–Roys did not offer specific factual support in their opposition to Aspen's motion for summary judgment. Because this issue was not raised below, we will not review it not on appeal. *See Christensen v. Howes,* 643 P.2d 525 (Colo.1982).

### B.

■ Appellants contend that the promulgation of Aspen Ordinances 57, 58, and 59 of the series of 1990 was accomplished through numerous violations of state statutes. Without identifying a specific conflict, appellants allege that the Aspen Charter's provisions regarding the adoption of uniform codes [6] are "inconsistent with the provisions of Part 2 of Title 31, Article 16 of the Colorado Revised Statutes. (31 C.R.S. §§ 16–101 et seq.)."

In adopting the Uniform Electric Code, the Uniform Plumbing Code, and the Uniform Mechanical Code, it is clear that the City of Aspen complied with the provisions of its own city charter. The issue then is whether the provisions of the Aspen City Charter which allow the adoption of such codes are superseded by conflicting state statutes. We believe that the procedure under which a city chooses to adopt an ordinance for use solely within the limits of that city, is a matter of purely local concern. *See e.g., Roosevelt v. City of Englewood,* 176 Colo. 576, 492 P.2d 65 (1971) (City of Englewood could require only a majority approval for a zoning ordinance, even though a state statute required a three-fourths majority vote). Therefore, even if the appellants had shown some conflict between state laws regarding the adoption of uniform codes and the provisions of the Aspen City Charter regarding the same,[7] the provisions of the Aspen City Charter would not be superseded by the state laws. *See City and County of Denver v. State,* 788 P.2d 764 (Colo.1990) (holding that charter provision which created residency requirement for city employees supersedes conflicting state provision); *Vick v. People,* 166 Colo. 565, 445 P.2d 220 (1968) ("[o]rdinances of home rule cities ... in matters of strictly local concern supersede state statutes relating to those matters....."). We therefore affirm the holding of the trial court that this issue presents no genuine question of material fact and, as a matter of law, Aspen is entitled to judgment.

### C.

■ Contending that the arguments it submitted below were supported in fact and in law, appellants argue that the trial court abused its discretion in finding that plaintiffs' claims were substantially frivo-

---

6. In this case, the City adopted the Uniform Electric Code, the Uniform Plumbing Code, and the Uniform Mechanical Code.

7. Appellants failed to provide any such evidence and presented no evidence to the trial court to refute the statement in the affidavit of Katherine S. Koch that Ordinances 57, 58, and 59 were promulgated in compliance with state statutes.

lous and that the city was entitled to an award of attorney fees.

Under section 13–17–102(4), 6A C.R.S. (1987), a court "shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that ... was interposed for delay or harassment." An award of attorney fees is within the trial court's discretion and its decision may not be disturbed on appeal if supported by the evidence. *Haney v. City Court for City of Empire,* 779 P.2d 1312, 1316 (Colo.1989).

Here, the trial court's ruling is clearly supported by the evidence. As determined by the trial court, the appellants' argument, that our opinion in *Horan* is not dispositive here because the facts are distinguishable and because there exists a dissent, is substantially frivolous.[8] Nor is there "substantial justification," as explained above in part B, for the appellants' argument that the City of Aspen's promulgation of Ordinances 57, 58, and 59 violates numerous state statutes. In making this contention, appellants fail even to specify which state statutes are violated by the Aspen City Charter.

### D.

██ Finally, under Colorado Appellate Rule 38(d), we assess the costs of this appeal to appellants. Under Rule 38(d) "[i]f the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." *See Southeastern Colo. Water Conservancy Dist. v. Cache Creek Mining Trust & Twin Lakes,* 854 P.2d 167, 177 (Colo.1993) (awarding attorney fees to appellees for defending an appeal of a motion which was untimely and "wholly without merit"); *In re Marriage of Trask,* 580 P.2d 825, 40 Colo.App. 556 (1978) (defen-

dant was damaged by frivolous appeal; damages assessed in amount equivalent to legal fees and expenses incurred in defending her position on appeal).

Appellants persist in making the same arguments on appeal which, as noted in section C of this opinion, were correctly rejected as frivolous at the trial court level. The frivolity of these arguments has not lessened in the interim. Additionally, the vexatious nature of this appeal is compounded by the fact that appellants now attempt to present arguments to this court (i.e., bias of the municipal court) which were not raised in the court below. We therefore award damages equal to legal fees and costs to the City of Aspen pursuant to the provisions of C.A.R. 38.

### IV.

Because we conclude, based on principles previously stated, that the record below will support the trial court's determination that this action was "substantially frivolous" and continued without "substantial justification," we affirm the district court's order. Additionally, due to appellants' persistence in asserting the same arguments on appeal which were properly rejected as frivolous below, we grant appellee's request for legal fees and costs associated with this appeal. Accordingly, we remand this matter to the trial court with directions that it conduct proceedings necessary to determine the amount of attorney fees consistent with its order below and to assess attorney fees and costs associated with this appeal in favor of the City of Aspen.

---

**8.** Appellants base much of their argument on the dissenting opinion in *Horan,* 556 P.2d 1217, 1220–23. Notwithstanding the negligible precedential effect of dissenting opinions, this dissent lends little support to appellants' argument since the facts are readily distinguishable from the instant case. The dissent was based on the

fact that, unlike the instant case, the City Charter of Thornton provided that municipal judges are appointed to serve at the pleasure of the city council, and also unlike the instant case, the Charter of the City of Thornton provided no guidelines for removal of a judge for cause.