Bernie MARTIN, Plaintiff–Appellee,

v.

Paul ESSRIG, Defendant–Appellant,

and

Concerning David S. Carroll, Attorney–Appellant.

No. 09CA2182.

Colorado Court of Appeals, Div. III.

Aug. 4, 2011.

Hall & Evans, L.L.C., David E. Leavenworth, Jr., Brian Molzahn, Denver, Colorado, for Plaintiff–Appellee.

David S. Carroll, Denver, Colorado, for Defendant–Appellant and Attorney–Appellant.

Opinion by Judge J. JONES.

Paul Essrig (tenant), a former tenant of a residence owned by Bernie Martin (owner), appeals the district court's denial of his C.R.C.P. 60(b)(3) motion challenging as void a judgment in owner's favor on a claim that tenant had breached the parties' lease. He and his counsel, David S. Carroll, Esq., also challenge the district court's award of attorney fees incurred by owner in responding to the motion.

Mr. Carroll has filed briefs supporting this appeal which largely fail to advance a coherent argument in support of the contention of error. Most troubling, however, is the tenor of the opening and reply briefs. They are suffused with uncivil language, directed primarily against owner's attorneys, and sarcastic and bombastic rhetoric. This is not merely bad advocacy; it is, at least in large part, inconsistent with Mr. Carroll's professional obligation to represent his client in a civil manner. We therefore strike the opening and reply briefs, dismiss the appeal, assess attorney fees and double costs against Mr. Carroll, and remand the case to the district court for a determination of the reasonable attorney fees owner has incurred on appeal.

## I. Background

Owner filed a complaint in county court for possession of the premises and damages for breach of the lease. Tenant asserted a counterclaim, and, as a result, the case was transferred to district court. Tenant ceded possession and confessed judgment for two months rent. Owner maintained, however, that tenant had not confessed judgment for all the damages sought.

Shortly before trial, owner sought to amend his complaint to claim additional damages. The district court denied the motion.

The case was tried to the court. During trial, Mr. Carroll objected several times that

owner was putting on evidence of damages beyond those claimed in the complaint. The district court overruled the objections, reasoning that the evidence was relevant to the issues raised by the pleadings. The court found for owner on his claim and tenant's counterclaim, and awarded owner damages totaling $16,876.

Owner moved for an award of attorney fees under a prevailing party provision in the lease and section 13–17–102, C.R.S.2010 (providing for an award of attorney fees where a party's claim or defense "lacked substantial justification"). He also moved for an award of costs. The district court granted both motions.

Tenant filed a C.R.C.P. 59 motion to amend the judgment. He argued, as he had at trial, that the court had awarded damages beyond those encompassed by the factual allegations in the complaint. He made the same argument in two post-trial motions challenging the court's award of attorney fees and costs.

Following a hearing, the court again ruled that the damages awarded did not go beyond those contemplated by the pleadings, and denied tenant's post-trial motions.[1] The court sanctioned tenant under section 13–17–102 for filing the post-trial motions pertaining to the awards of attorney fees and costs.

Tenant appealed, challenging the district court's denial of his post-trial motions. A division of this court dismissed that portion of the appeal challenging the denial of the post-trial motion pertaining to the merits judgment, agreeing with the district court that the motion was untimely. The division affirmed the denial of tenant's motions challenging the award of attorney fees, and awarded owner his appellate attorney fees under the prevailing party provision and section 13–17–102. The division explained that tenant's appeal was substantially frivolous and groundless because: (1) his briefs failed to comply with C.A.R. 28 in several ways; (2) the reply brief consisted of "little more than . . . a series of rhetorical questions and statements regarding the intemperance of opposing counsel"; and (3) "[t]he arguments actu-

ally made [in the briefs] either were not made to the trial court, assert errors in orders not appealed, or lack any support in the law." *Martin v. Essrig,* (Colo.App. No. 07CA0994, 2008 WL 2612365, July 3, 2008) (not published pursuant to C.A.R. 35(f)) (*Martin I* ). The division assessed attorney fees against both tenant and Mr. Carroll.

Almost one year later, tenant filed the Rule 60(b)(3) motion at issue in this appeal. He contended that the judgment was void because, as he had unsuccessfully asserted several times earlier in the litigation, the damages awarded exceeded those implicated by the complaint's factual allegations. Concluding that tenant was merely attempting to relitigate an issue that had already been decided "on several occasions," the district court denied the motion. The court awarded owner his attorney fees and costs incurred in defending against tenant's motion under section 13–17–102, finding that the motion was "substantially frivolous, substantially groundless, and substantially vexatious." The order directed both tenant and Mr. Carroll to pay attorney fees and costs.

## II.   Discussion

On appeal, tenant again maintains that the damages awarded by the district court go beyond those supported by the allegations in the complaint. He contends that this renders the judgment void because the district court entered it without subject matter jurisdiction.

Owner responds initially that we should strike tenant's briefs, dismiss the appeal, and impose other appropriate sanctions because tenant fails to comply with the appellate rules governing the form and content of briefs and because tenant's opening brief contains "inappropriate and unprofessional commentary." Owner contends such sanctions are appropriate under C.A.R. 38(d) and (e) and section 13–17–102.

■   Owner's request is well-taken. In rare cases, conduct in prosecuting an appeal is so contrary to court rules and so disrespectful of the judicial process and the participants therein that the right to appellate

---

1.   The court ruled that tenant's Rule 59 motion challenging the merits judgment was untimely.

review is forfeited. We conclude that this is such a case.

## A. Deficiencies and Improper Language in Tenant's Briefs

In *Castillo v. Koppes–Conway*, 148 P.3d 289 (Colo.App.2006), a division of this court held that an appellant's brief did not comply with C.A.R. 28(a)(4), in part because, rather than setting forth a "cogent argument," it presented "tortured rhetoric." *Id.* at 291. The division refused to review the order at issue and summarily affirmed. *Id.*

■ Tenant's briefs in this appeal likewise fail to set forth a cogent argument. Though we believe we understand what tenant contends the error is, his briefs do not coherently explain why the district court erred: the analysis is obscured by irrelevant digressions, lack of structure, and use of a rhetorical style that is verbose, derogatory, and sarcastic.

For example, the opening and reply briefs repeatedly address—using inflammatory language—an alleged discussion between owner's counsel and tenant, which Mr. Carroll characterizes as a violation of ethical rules. That matter, however, does not have anything to do with the issue in this appeal.[2] The opening brief also contains a two-page discussion of an inapposite hypothetical involving the use of official review in a National Football League game.[3]

■ The opening and reply briefs accuse owner's attorneys—again, using inflammatory language—of lying, acting illegally, violating the rules of professional conduct, defying court orders, and litigating the case for improper motives. They similarly accuse owner of acting dishonestly and for base purposes. The vast majority of these accusations have nothing to do with the issues raised in this appeal, even tangentially. The opening and reply briefs also include numerous other inappropriate statements.[4]

Such rhetoric hinders the court in deciding the merits of the appeal; we must waste judicial resources hacking through the verbal brush to uncover the substance (if any) of the arguments. It also disserves parties and debases both the legal profession and the judicial system. *See In re Abbott*, 925 A.2d 482, 485 (Del.2007); *see also Snyder v. Secretary of Health & Human Services*, 117 F.3d 545, 549 (Fed.Cir.1997) (condemning the use of language similar to that employed here); *Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 161–62 (D.N.J.1999) (making the same point in the context of motions practice in the trial court); *Gregoire v. Nat'l Bank of Alaska*, 413 P.2d 27, 42–43 (Alaska 1966).

■ Further, using such degrading and disparaging rhetoric appears to "cross[ ] the line from acceptable forceful advocacy into unethical conduct. . . . 'Lawyers are not free, like loose cannons, to fire at will upon any target of opportunity which appears on the legal landscape. The practice of law is not and cannot be a free fire zone.'" *In re Abbott*, 925 A.2d at 489 (quoting in part *Cannon*, 190 F.R.D. at 162); *see* Colo. RPC Preamble: A Lawyer's Responsibilities Preamble 5 ("A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal sys-

---

2. Tenant's briefs fail to offer any detail as to the alleged prohibited contact. We do not condone prohibited contact between attorneys and represented parties. And a party's attorney may bring such contact to the court's attention when appropriate. But counsel must do so in a professional and respectful manner.

3. The opening and reply briefs also violate C.A.R. 28 and 32 in several other respects. *See* C.A.R. 28(a)(3), (e), 32(b)(2). In *Martin I*, the division admonished and sanctioned Mr. Carroll for filing briefs that were "virtually devoid of citations to the record, a standard of review, or legal authority supporting his position." *Martin I*, slip op. at 7–8. Though the briefs Mr. Carroll has filed in

this appeal do not suffer from all the same deficiencies noted in *Martin I*, they repeat some and contain new ones. The unmistakable impression conveyed by the briefs is that Mr. Carroll does not take seriously his obligation to comply with the appellate rules.

4. Examples of improper language in the opening and reply briefs are noted in the Appendix to this opinion. In noting these examples, we do not intend to imply that language of like kind, though perhaps not as extreme or frequent, may be acceptable. The use of any language failing to rise to the level of civil discourse is inappropriate, and may, depending on the circumstances, justify sanctions.

tem and for those who serve it, including judges, other lawyers and public officials."), Preamble 9 ("Zealousness [in pursuing a client's legitimate interests] does not, under any circumstances, justify conduct that is unprofessional, discourteous or uncivil toward any person involved in the legal system."); Colo. RPC 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous...."); Colo. RPC 3.5 cmt. 4 (a lawyer must "[r]efrain[] from abusive or obstreperous conduct"; "patient firmness" is appropriate but "belligerence or theatrics" is not); Colo. RPC 8.4(d) (it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice").[5]

Caustic rhetoric is never necessary to protect a client's interests.

Civil behavior towards the tribunal and opposing counsel does not compromise an attorney's efforts to diligently and zealously represent his or her clients. "Indeed, it is a mark of professionalism, not weakness, for a lawyer zealously and firmly to protect and pursue a client's legitimate interests by a professional, courteous, and civil attitude toward all persons involved in the litigation process."

*In re Abbott,* 925 A.2d at 488 (footnote omitted) (quoting in part *Paramount Communications Inc. v. QVC Network Inc.,* 637 A.2d 34, 54 (Del.1994)); *see also* Colo. RPC Preamble: A Lawyer's Responsibilities Preambles 5, 9; Colo. RPC 3.5 cmt. 4.

Without a hint of irony, the opening brief states: "[t]here is a point at which zealous representation does harm to the judicial system...." We could not agree more.

## B. Disposition

Having concluded that the opening and reply briefs persistently run afoul of this court's rules and counsel's obligation to represent tenant in a civil manner, we must decide what, if any, sanction to impose. We consider the degree of the briefs' noncompliance, as well as the fact that this is not the first time Mr. Carroll has abused the privilege of representing parties before this court. *See Martin I,* slip op. at 7–8; *Barnwater Cats Rescue Organization, Inc. v. Gardea,* (Colo.App. No. 08CA1947, 2009 WL 4857375, Dec. 17, 2009) (not published pursuant to C.A.R. 35(f)) (noting language in briefs filed by Mr. Carroll similar to that here); *Salazar v. Clancy Systems Int'l, Inc.,* (Colo.App. No. 08CA2210, 2009 WL 1816275, June 25, 2009) (not published pursuant to C.A.R. 35(f)) (concluding that the appeal pursued by Mr. Carroll was frivolous); *Parks v. Pizza Hut of America, Inc.,* (Colo.App. No. 88CA1390, Apr. 12, 1990) (not published pursuant to C.A.R. 35(f)) (concluding that the appeal pursued by Mr. Carroll was frivolous); *see also People v. Carroll,* (Colo. O.P.D.J. No. 09PDJ020, 2009 WL 2152341, June 26, 2009) (imposing discipline against Mr. Carroll for, in part, filing "meritless post-trial and appellate pleadings").

In light of these considerations, we strike the opening and reply briefs and dismiss the appeal. *Tatham v. First Nat'l Bank,* 137 Colo. 499, 501, 326 P.2d 983, 985 (1958) (striking statement in the appellant's brief that the appellee's counsel had "flagrantly violated all of the ethics of an honorable profession"); *Knapp v. Fleming,* 127 Colo. 414, 415, 258 P.2d 489, 490 (1953) (striking brief containing "scurrilous" statements,

---

**5.** Tenant's opening and reply briefs also contain statements which, viewed in context, could be regarded as attacking (without any articulated foundation) the district court's integrity. We caution litigants that such attacks are inappropriate. *See Big Dipper Entertainment, L.L.C. v. City of Warren,* 641 F.3d 715, 719 (6th Cir.2011); *Cruz v. Commissioner of Social Security,* 244 Fed. Appx. 475, 482–84 (3d Cir.2007); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 732 F.2d 903, 907 (Fed.Cir.1984); *Gregoire,* 413 P.2d at 42–43; *Wilburn v. Reitman,* 54 Ariz. 31, 91 P.2d 865, 866–67 (1939); *In re Abbott,* 925

A.2d at 486–88; *In re Wilkins,* 777 N.E.2d 714, 715, 718 (Ind.2002), *modified,* 782 N.E.2d 985 (Ind.2003); *Peters v. Pine Meadow Ranch Home Ass'n,* 151 P.3d 962, 963–67 (Utah 2007); *see also In re Foster,* 253 P.3d 1244, 1258–59 (Colo. 2011) (approving discipline of an attorney for making objectively baseless and improperly motivated allegations of bias against a judge; such allegations are not protected by the First Amendment); *In re Green,* 11 P.3d 1078 (Colo.2000) (discussing First Amendment limits on disciplining an attorney for criticizing a judge).

"frequent invectives and vituperations," and "derogatory remarks concerning the trial judge"; appeal dismissed, at least in part, because of language in the brief); *Diamond Tunnel Gold & Silver Mining Co. v. Falkner*, 17 Colo. 9, 10, 28 P. 472, 473 (1891) (striking brief that used improper language in referring to the trial judge); *see Bruce v. City of Colorado Springs*, 252 P.3d 30, 32 (Colo.App.2010) (recognizing that striking a brief and dismissing an appeal may be appropriate remedies for failing to comply with appellate rules); *see also* C.A.R. 38(e) ("The appellate court may apply such sanction as it deems appropriate, including dismissal, for the failure to comply with any of its orders or with these appellate rules."); *Mauldin v. Lowery*, 127 Colo. 234, 235–36, 255 P.2d 976, 977 (1953) (summarily affirming the judgment where the appellant's brief failed to comply with appellate rules); *Castillo*, 148 P.3d at 291 (same).[6]

In addition, we order Mr. Carroll to pay attorney fees and double costs associated with this appeal.

C.A.R. 38(d) provides that an appellate court "may award just damages and single or double costs to the appellee" if the appeal is frivolous. Such damages may include attorney fees. *Artes–Roy v. City of Aspen*, 856 P.2d 823, 828 (Colo.1993).

Section 13–17–102(2), C.R.S.2010, provides that a court may award attorney fees where a party brought an action that "lacks substantial justification." An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4), C.R.S. 2010.

■■■ As the division noted in *Castillo*, 148 P.3d at 292, an appeal may be frivolous in two distinct ways: (1) it may be frivolous

as filed; or (2) it may be frivolous as argued. An appeal is frivolous as filed when the district court's judgment is so plainly correct and the legal authority so clearly against the appellant's position that there is really no appealable issue. An appeal is frivolous as argued where the appellant commits misconduct in arguing the appeal. *Id.*

■■■ Tenant's appeal may well be frivolous as filed. (An award of allegedly excessive damages has nothing to do with a court's subject matter jurisdiction. *See Wood v. People*, 255 P.3d 1136, 1139 (2011) (discussing distinction between subject matter jurisdiction and a court's general authority to act).) The appeal is certainly frivolous as argued. *See Castillo*, 148 P.3d at 292–93 (appeal was frivolous as argued where the appellant failed to set forth a coherent assertion of error, with supporting legal authority, as required by C.A.R. 28); *cf. Peters*, 151 P.3d at 967–68 (imposing sanctions, including striking of briefs and awarding of attorney fees, where briefs contained unfounded attacks on judges).

Therefore, we order Mr. Carroll to pay the reasonable attorney fees incurred by owner in this appeal and double costs.[7] In the circumstances here, Mr. Carroll, not his client, should pay the costs. *See Castillo*, 148 P.3d at 293 (where an appeal is frivolous for reasons solely within counsel's control, the appellate court may direct an award of costs and attorney fees be paid by counsel alone).[8]

We exercise our discretion under C.A.R. 39.5 to remand the case to the district court for a determination of owner's reasonable attorney fees incurred on appeal.

The opening and reply briefs are stricken. The appeal is dismissed. We order Mr. Carroll to pay reasonable attorney fees and dou-

---

6. To be clear, we view the intemperate language in the briefs as alone sufficient to justify the sanctions we impose.

7. Owner is also entitled to his appellate attorney fees from tenant under the prevailing party provision of the lease. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1223 (Colo.App.2008). However, owner is entitled to only one recovery of his appellate attorney fees.

8. Though C.A.R. 38(d) does not expressly indicate whether counsel, as opposed to a party, may be ordered to pay costs and attorney fees, such a result is permissible. *Castillo*, 148 P.3d at 293; *see also Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed.Cir.1991) (applying Fed. R.App. P. 38); *Avery v. Steele*, 414 Mass. 450, 608 N.E.2d 1014, 1017 (1993) (applying Mass. R.App. P. 25).

ble costs, and the case is remanded to the district court for a determination of owner's reasonable attorney fees incurred on appeal.

Judge ROY and Judge LOEB concur.

## APPENDIX

Examples of inappropriate language in the opening and reply briefs:

1. Characterizing owner's position that the issue of whether the damages were proper had previously been decided as "desperately contrived."

2. Accusing owner of expanding the litigation "in reprisal to Essrig's counterclaim."

3. Accusing owner's counsel of pursuing a judgment "that they *knew* would be illicit" and proceeding "impiously" to obtain such a judgment. (Emphasis in the brief.)

4. Accusing owner's counsel of having "doggedly sought [the judgment] in purposeful defiance of elementary procedural due process precepts and in disobedience of the court's fresh order ...".

5. "Martin's attorneys' [sic] have repeatedly engaged in a disturbing pattern of conduct, attempting to deftly tread the line demarcating overt violation of the Rules of Professional Conduct (at times crossing the line)...."

6. "Time and again [owner's attorneys] cite inapposite case law and misrepresent the holdings...."

7. Saying that tenant believes the litigation "has been driven by pettiness and vindictiveness, exacerbated at the trial with what he considers perjured testimony by Martin."

8. "Incredibly—*incredibly*—Martin's lawyers brazenly used this illicitly obtained remark, ... obtained in direct violation of the code of professional conduct and cunningly removed from proper context...." (Emphasis in the brief.)

9. "Talk about the kettle calling the pot black! Maybe Martin's attorneys should be in politics, where the slinging of mud, the distortions of facts, and general evasiveness [sic] of issues are so rife that the electorate has seemingly become inured to it all."

10. "The trial court evidently was not at all disturbed by Martin's attorneys' cunning use of this illicitly obtained, manipulated remark."

11. Owner's attorneys' advocacy "entails deliberate misrepresentations of case law," "deliberate falsification of the case history (mendaciously maintaining that there is finality on the issue of the judgment being void ...),'' and "uncountenanced defiance of the dictate to abstain from communicating with Essrig about the litigation."

12. The allegations in the amended complaint were "a superficial means of retaliating for Essrig's counterclaim."

13. "Martin instead falls upon the canard that there is finality upon whether the judgment may be decreed void."

14. "Martin has hitched his cart to the ruse that there is finality upon the issue presented in the C.R.C.P. 60(b)(3) motion to void the judgment."

15. "Martin's ludicrous statement, incorrect at best (*at best!*), falsely attributes to the appellants a contention they never expressed, and thus borders on intellectual mendacity." (Emphasis in the brief.)

16. "The abstention by Martin in pinpointing any of those features effectively belies Martin's false statement, exposing that he finds the appellants' motion to be terribly disquieting, threatening a judgment that is of tremendous importance purely for the psychological dimension, it being a representation to Martin of dominance, providing the impetus to desperately rummage for an argument to resist the motion to void."

17. "Martin's contrived thesis, despite all logic, is that" seeking to vacate the judgment is the same as seeking to void it.

18. "Even before this case reached the courtroom for trial, Martin's stance and conduct had been ignoble, if not downright pathetic, entailing utilization of the legal system as a petty means of advancing a psychological agenda. Martin sought this judgment purely as some sort of bizarre personal triumph over Essrig. It has been theater—

litigation run amok, with no practical utility . . . ."

19. "Martin's position ... is a sham. This could occur only by some metaphysical marvel . . . ."

20. "Martin has been desperately trying to find a way to thwart ultimate resolution of [the appeal] upon its actual merit. Now, this latest maneuver, contending that the manner in which the record is presented will require the court to 'comb the record for evidence,' is of course hyperbolic nonsense."

21. "Martin continues to fall upon the canard that there is finality . . . ."

22. "Foisting the contention that there is finality is disrespectful of the truth . . . ."

23. "That statement is disrespectful of the truth."

24. "If this line of reasoning seems hard to follow, that's because it is, because Martin's view is contrived nonsense."

25. "This is a ridiculous and dishonorable contention . . . ."

26. "That's an incredible comment, as though Martin feigns being obtuse about the reason the judgment is incipiently void— feigns it as a ploy to divert scrutiny from the essence of the motion. . . ."

27. "Martin insultingly persists in mischaracterizing the issue . . . ."

28. "Martin is feigning obtuseness as a digression."

29. "But of course Marin yearned to expand the litigation in reprisal to Essrig's counterclaim."

30. Owner pursued "a judgment that his attorney knew was illicit . . . ."

31. "Martin concludes the brief with the hackneyed shibboleth that the appeal is groundless, frivolous, etc."